Back on the record, we'll hear TATIS v. Allied Interstate LLC, number 16-4022. Let's hear from him. Good afternoon and may it please the Court. I'll remark as for the appellant, Michel TATIS. May I reserve five minutes for rebuttal? That is granted. Thank you, Your Honor. This case arises out of a debt that was over a decade old that was purchased by a professional debt purchaser, LVMV Funding, for what was likely two cents on the dollar. LVMV then hired the appellee to attempt to collect the debt, and in its attempt, it misled the appellant as to the legal status of the debt. Well, I think we can probably cut right to the chase. We're pretty familiar with the facts here. I mean, I've got the letter here. Your point is well taken on the word settlement, but here we have settlement of the debt. It's not settlement of a lawsuit, as you seem to suggest, but settlement of the debt. Doesn't that take it outside of some of the cases that you're talking about that go the other way? Well, first off, the Fifth, Sixth, and Seventh Circuits that dealt with this, the letters were very similar, and the letter in the Seventh Circuit was almost identical to our letter. And what the Third Circuit said in Caprio v. Healthcare Revenue Recovery is it's not the court's job to determine who has the more appropriate reading, the debt collector or the consumer. It's to determine how a least sophisticated consumer would interpret a letter. Right. And in Quirtus, we made it clear, didn't we, that a debt collector can, within the law, come forward on a debt that's past the statute of limitations on collection and say, hey, you owe this money, and we'd like you to resolve that debt. And we said that was all right, didn't we? That's exactly right, Your Honor. So your entire case, and that's binding precedent on us. Correct. So your entire case comes down to the assertion that the difference between the word resolve and the word settle is outcome determinative here, right? Yes, Your Honor. Settle and resolve are two completely different phrases in the context of litigation. Now, while their meanings may be similar, for example... As you said, in the context of litigation. That's sort of assuming in, right? Because here, the point is there was no litigation, and the precise language used by the letter was settlement of the debt. Yes. What I meant within litigation, I meant when consumers hear the word settlement, they connect it with a lawsuit. I'll give a good example of that. If a consumer is watching TV and they hear a commercial come on and says, did you take a certain medicine? You may be entitled to a settlement. And they understand that means that they can sue and make money. They don't hear, you may be entitled to a resolution. All over the TV and news, they hear about these large settlements. Some bank decides to pay $25 million, and they understand that means that they're paying to resolve or end a lawsuit. Don't people use the word settle in other contexts? Don't people say, I wish you'd settle your differences? And that doesn't mean I think you're in a lawsuit. It means I know you've got a disagreement. Or don't people say, I wish you would settle your affairs so that you can move on? That doesn't mean you're in a lawsuit. It means there are things to be resolved. Resolve them. Right. But first off, we're dealing with a collection letter that's demanding money. So it's not settle your affairs. We're asking you to pay a certain amount of money, and here's a settlement. So they're reading it within that context. So within that context, I think most consumers would hear that and say, I either have to pay this amount of money or I can be sued. Well, you can be sued. That's true. Yes. Your client could be sued tomorrow on this stale debt. Right, which would be a violation of the FDCPA. To be sued on it? On the time bar debt. No. It could be sued. Then it would be on your client to raise an affirmative case. Yeah, what case law says that 1692E5 restricts debt collectors from taking any action that cannot legally be taken. This action can legally be taken, right? Are you saying that a lawyer that sues on a stale debt violates Rule 11 by filing an inappropriate pleading? I would hope that if a debt collector knew that the debt was time barred and they decided to sue on it, they'd be violating 1692E5. Why? It's not time barred. It's a winning case. Your client owed, what, $1,200? Am I remembering that correctly? I'm not sure how much she owed, but they were alleging $1,200. Hold on. Slow down a little. Sure. If your client, let's say the number is $1,200. If your client did not pay Bally's Fitness $1,200, your client owes that money, and a lawyer says, you know, I'll take your case, Bally's. I want to do all your collection work, Bally's. You've got a lot of people that sign up and don't pay. So I'll go after all of them, right? Those are winning cases unless and until the defendant raises the affirmative defense of the statute of limitations, correct? I disagree. And the Third Circuit in Huertas said it's a violation if you sue on this debt. So if you're asking for the case, then. No, no. I thought we said in Huertas it's a violation of the statute if the dying letter includes a threat of litigation. Is that what we said? My reading of Huertas was it's either a threat of litigation or actually suing would be a violation. Where is that in Huertas? Because you may be right on that, but I'm not remembering that second part. Let me give you the sentence. It's page 33. It says, The FDCA permits a debt collector to seek voluntary repayment of the time-bar debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts. But it may well be the case that that was initiate language was used in connection with the dying letter. That is a statement that we're going to sue you or here's a complaint. I'm not sure that Judge Hardman isn't precisely right that it's a valid suit unless and until there's an affirmative defense raised. But be that as it may, your case entirely rests on this lexicographical point that the word settle to the least sophisticated debtor, that's got to mean lawsuit and it can't just mean resolve. Right now we're at the 12B6 stage, and all we have to show is that the plaintiff has pled a plausible claim. And if you review the FTC's opinion, the CFPP, two government bodies charged with enforcing the FDCPA, the Fifth Circuit, the Sixth Circuit, and the Seventh Circuit, they've all held that a consumer could be misled by this language. And that's all we have to show here. We haven't had a chance to get evidence on this issue. So we don't have to show that they would be. We haven't had a chance to get evidence. Are you saying that this is a question of fact? No, I'm not. Okay, then what difference does evidence make? Well, in terms of this context, I think this could be decided as a matter of law. Okay. Then judgment on the pleadings is a perfectly logical place for us to be talking about this, right? Well, the only way that could be is if the plaintiff's interpretation was bizarre or idiosyncratic. I think in light of the FTC and the CFPP who are government bodies who did test. What kind of weight do we put on that, their consent orders and reports? This court doesn't have to give a difference. But I think in light of the fact that we're trying to deal with what is misleading to a least sophisticated consumer, the FTC, as stated in FTC v. Colgate, may be in a better position in the court to determine what is misleading. They've done studies. They've looked into it. And we ask this court, just as the Fifth, Sixth, and Seventh Circuits did, to give some deference to the FTC's report. That's a question I had. You make a reference in your brief to their study in this. Was there ever any published findings or anything? Currently, my understanding is that the CFPP is continuing doing studies on this. They've put together a proposal, which doesn't mean anything right now, to discuss the idea of putting the disclaimer that they advocate for. But there has been no official finding. Okay. Well, the CFPP also takes a position in the FTC that debt collectors shouldn't be permitted to approach debtors on time-barred debts at all, right? Well, I think their position was that it would be smart if they put a disclaimer. And they discussed that in an agreement they made with Asset Acceptance. But they never held as a policy matter. If it were a policy matter, it would be a nice world, I think, for your client and others like them if these Dunning letters said something along the lines of, hey, you owe $1,200, but if you feel a real moral obligation to pay this off, we'll let you off the hook for $200. But be advised the Statute of Limitations ran six years ago, and nobody's going to sue you. And if they do sue you, they're not going anywhere. Sure. That would be great, right? Right, but that's not what we're advocating for. Right. What do they need to say? Do they need to affirmatively tell you that the Statute of Limitations has run? No. Where it says that they don't, all the courts have said they don't. The FTCPA says they don't. And unless the CFPP puts together legislation on that, there's no requirement. All right. So you're focused on the language. You're saying, okay, you don't have to tell us that the jig is up, the statute's run, but what you can't do is you can't trick the least sophisticated consumer into thinking they are going to get sued. You can't mislead the least sophisticated consumer. 1692E2 specifically says you can't falsely represent the legal status of the debt, if I may just finish this point. And so what they're getting at is while Huerta says that it's not automatically unlawful to try and collect the time bar debt, if you're going to use language that misleads the least sophisticated consumer by putting in words like court, judgment, lawsuit, or settlement, then you should have to notify the consumer. Those are all different, way different terms. Yes, they are. However, but if they all mislead the consumer as the legal status of debt, there's no bar on how high you have to mislead them. As long as you mislead the consumer, then you are in violation of 1692E2 of the FDCPA. Mr. Marks, you're not suggesting that if they had sent a letter that said, hey, you owe Bollies 1,200 bucks, you should pay that, then you should pay it now, that you would have a claim, right? As long as it has all the other requirements, we would not have a claim. Right. So we're in a world where if somebody writes and says, you owe 1,200 bucks, but we'll take 120 bucks and that will settle it, that that's a legally actionable thing. In fact, that's a class action. Again, that's the legal position, right? We're talking about a significantly old debt that's over a decade old. I'm taking that as a yes. That is the legal position we are taking, yes. 1692E2 restricts misleading consumers as the legal status of a debt, and that's the position we're taking. Okay. Okay, thank you, counsel. We are on rebuttal. Yes. James Merton, Your Honors. May it please the Court for the appeal, please. There you go. Two things, Your Honors. First, our position initially is that Quirtus answers the essential question posed in this case, and it ought to be followed on the basis that using the word resolve and using the word settle in the context of the letter that was written in this case is comparable. There's the question, right? It's not identical. Yeah. So it doesn't control. By definition, if it's not identical, it doesn't control. It can only be persuasive, and we need to determine how comparable it is, right? So let me say two things on that. As I read the Court's panel stare decisis rule, it says the issue confronted has to be the same, and the issue confronted in each case here, at least writ large, is when is there a violation of the FDCPA for collecting on a time-barred debt. See, I would define the issue as does the letter in this case run afoul of any of the prohibitions of the FDCPA, and is it not always a highly fact-dependent inquiry? Is it not the case that these debt collection companies are constantly tweaking these letters based upon what courts say or what Congress says? So let me take the highly fact-dependent inquiry first, and I would point the Court to Judge Mansman's opinion in the Wilson case, which says contextually this issue about deception or misleading can be decided on a motion to dismiss. I think the Court has the record here in order to do that. Okay. Assume that's true, but answer Judge Hardeman's point, which is it's fact-dependent in the sense that we're looking at different words, right? Okay. Settle is a different word than resolve, and we have to address is it different enough to do exactly what Mr. Marcus says, and that is different enough to mislead somebody, the least sophisticated debtor, into thinking, I'm going to get sued if I don't pay this. So taking the question anew, if it's for the first time now on whether there is a difference between settle and resolve in terms of the letter here which requested final payment in the same fashion that the call did in Huertas, if the Court has to look at whether settle leads to a fact issue over what the least sophisticated debtor would think, I don't think it's plausible to get from the use of the word settle in this letter to a fact issue on what the least sophisticated debtor would think. It's so implausible three United States Courts of Appeals have so held, and two agencies of the United States government. Well, two agencies of the United States government have not held in the context of a settlement letter like this one that it's misleading or deceptive in any respect. So start there. The FTC has said under the statute there are only three violations, and these are identified in its report. A threat to sue, initiation of a lawsuit, or the use of a letter like this one where the debt would be revived or the statute of limitations would be revived. The FTC does not have in any of its reports either an indication that this disclosure of the time bar would be required under the FTCPA or in looking at a letter like this one that it would be deceptive. If you set aside the agencies, if you say, hey, they're really not speaking to this, okay, set it aside. You do have the Seventh Circuit. You've got the Sixth Circuit over a pretty vigorous dissent, so it's not like they didn't have somebody making the other side point for them. You've got the Fifth Circuit. You've got three courts of appeals saying use of this kind of languished settlement is plausible to say it's misleading to a debtor. So why would we disagree with them? Well, I think you could for a number of reasons, Your Honor, and let's stick with what we know to start with. I want to focus on the letter, and then I want to move into the heart of what the other courts had to say about it. But starting with the letter, it offered to settle a final payment, $0.10 on the dollar. We're completely familiar with this. This is not a valid record. I get that, Your Honor, but I think this is important to frame the question on why we don't have a fact issue here and why you don't get from the word settlement plausibly to the threat of litigation or enforceability of the debt, which is the real issue. So why would anyone pay a penny to settle a debt they have no legal obligation to pay? They don't necessarily have to. I know they don't have to, so why would they? I think that's part of my point, Your Honor. They'd read the letter. They'd say forget it. Obviously, some people don't say forget it. We agree that some people are paying. The fact that there's a multi-billion dollar industry here means some people are paying these debts, right? It is the least sophisticated debtor doing that because you can get from the word settle in this letter to the threat of litigation to the notion that it's enforceable as a matter of law and therefore a misrepresentation. Aren't they doing it because there's some benefit to them to do it? Well, that's precisely the point. And that's misleading because there is no legal benefit. Maybe to go back to maybe you should answer what I asked Mr. Marcus. Could these companies just all bring suit on these stale debts? Because absent an affirmative defense being pleaded, it's a winning lawsuit. So let me answer why the debtor might pay first. They could pay voluntarily because they do owe the debt. It's a legal obligation and the status of it, it's lawful. There are other reasons to pay beyond the moral reason. It affects your insurance rates. It can affect your ability to get credit. And so the question is do we have to get to somewhere other than what settle means in the ordinary parlance? There are eight definitions of settle that don't involve legal. And, in fact, all of them in Webster's or American Heritage Dictionary, the late definitions involve final payment, resolve the controversy. They don't get you through this reasoning process from the use of settle in this context of the debt to the threat of enforceability. If it's appropriate to look at dictionary definitions and reason as you did, is it appropriate to look at this sort of corpora of the databanks of words and see how things are used? Because if you do that and it comes up that settlement is used vastly more frequently in the context of a legal setting, a legal dispute, a lawsuit, than it is in any other way, should we pay attention to that? Your Honor, I think in this context, the answer to that is still no. In the context of this particular letter, where there is no hint or threat of litigation, I think Judge Katlos has it right. Mr. Martin, hold on. I'm sorry. When you say there's no hint of litigation, I mean, you are assuming the answer. That's the thing we're here to talk about is is there a hint of litigation? The question that I'm trying to put to you is, you said we could look at dictionaries. Can we look at other things too? Is this a question of fact or is it a question of law or is it a mixed question of law and fact? Let me try to come at it another way. It's a question of law, Your Honor, on this record because, again, the least sophisticated debtor is not going to get to the position of legal enforceability from this letter. So the Second and Sixth Circuit judges who thought that they were, they were actually coming up with something which is utterly implausible because we're at the plausibility stage, right?  But we don't check our common sense at the door in looking at the least sophisticated debtor. But you're saying they did. I'm saying that they did. Yes, Your Honor. You should not follow those opinions. All the cases agree that the use of the word settlement in a letter like this is not a threat of litigation. That can't be the acid test though, right? This is where we get into a little bit of trouble with Veritas, right? Because was that loose dicta in Veritas where we said that you need a threat of litigation? Because I can tell you I can conjure all kinds of ways. If I had to draft a letter that was false, misleading, or deceptive, I could do that in myriad ways without threatening litigation. So it can't be the case that that extra textual gloss of threat of litigation is to be substituted for the statute, can it? No, but I do think that this is where the Seventh, the Sixth, and the Fifth double back on themselves. They all agree as a threshold matter that the use of the word settlement doesn't imply or infer threat of litigation. Yet that's exactly where we get to by the end of their analysis. No, Chief Judge Wood in her opinion, in McMahon, specifically said that what's misleading is not the threat of litigation. You're misleading the debtor into believing that this is an enforceable debt, irrespective of whether you sue. What they're selling is the opportunity to pay money, to not have to worry about a debt that if they were lawyers like us, they wouldn't worry about. That's where Judge Kethledge has it right in his dissent. Because to get to enforceability, you have to get to the threat to sue, which is inherent in the reasoning process. Well, the thing that Judge Kethledge has right is... He was worried about in Buchanan then that we've changed it from an unsophisticated debtor to someone steeped in the law, right? I think that's a quote. Well, that's part of it. But he also says that a debtor upon receipt in this letter will not go through these tortured series of hypotheses to get to enforceability in court. And I think he's spot on in that analysis. And not only that, we have to get to the point where this settlement letter is a misrepresentation about the enforceability of this debt in court. It's not just a benign inquiry. This is a statute that depends on deception. And as he said, and as Judge Jones agrees with him in her Fifth Circuit case that we put in by 28 Jane, you can't get there from here. Not only is the chain of hypotheses unreasonable, but as I said, it doubles back on the threat of litigation. It ignores the plethora of definitions in Webster's that fit this context specifically that aren't the lawyer-like phrasing. And it seems to me it is implausible, to get back to your Honor's question, that the least sophisticated debtor is going to adopt this lawyerly persona in response to this innocuous settlement, or use of the word settle in this letter, and get to the point where that's a statutory misrepresentation or deceptive. Should it be, and I'll ask again, is this a question of fact or law? Is this something, instead of speculating about what the least sophisticated debtor would think, is this something that ought to be permitted to go forward so that there can actually be evidence about what the least sophisticated debtor thinks? I think he said it was fact, right? Yes, but Judge Mansman in the Wilson case says this can be... Well, sure, I can imagine a circumstance where it is a question of law, where there's no question... I mean, I guess this sort of has the feel of a mixed question of law and fact, right? Like negligence, there's underlying facts that you would want to know about before you could say negligent, before you'd say you hit a legal standard. But this question of how the word settle is responded to by the least sophisticated debtor, I mean, maybe that's the kind of thing that ought to get fleshed out. I think if the court concludes that the chain of hypotheses that have to be applied to get the least sophisticated debtor there is in fact unreasonable, then the reasonableness quotient that overlays the inquiry here can result in this being a legal question, and this case should be dismissed as a matter of law. Two other quick points. The Seventh Circuit, the Fifth Circuit, and the Sixth Circuit also, I think, stretch on the legal status issue with respect to this debt. It has legal status. It is legally viable. It's okay to try to collect on it. Lastly, they say that Quirtus can be distinguished because Quirtus didn't address this issue in the context of the legal status of the debt, but it did exactly that, and that was the section that the court pointed to in making its analysis. How about this happens to be New Jersey law, and it's arguable that under New Jersey law, partial payment on debt doesn't revive the statute of limitations, but are we creating a problem? I mean, even if we were to go your way, wouldn't we be in a posture where we'd have to say, well, this is good law in the Third Circuit, but in New Jersey, because we can't tell you about Delaware and Pennsylvania and the Virgin Islands yet because that's not before us, so maybe this very same letter in our very same circuit, but just in a different district, will be actually unlawful. All of these decisions depend on context, and that actually could be the answer to the question, that the underlying law could make a difference. In some cases, it could. So now the least sophisticated debtor needs to know whether partial payment revives the statute of limitations? No, I would say that they don't, and we don't gravitate that direction. The question was, could differences in the underlying state law contextually make a difference in the analysis of this issue? And I think in states where there is a revival of the debt in full and a revival of the statute of limitations, you could very well answer this question differently. Well, that's precisely, I think, Judge Harmon's point. Now we're attributing to the least sophisticated debtor an understanding of the revival of statute of limitations laws, jurisdiction and jurisdictions. Ah, I'm in Delaware, so that is a deception right there because this could revive in my jurisdiction. I'm deceived. I would turn that around on the collector, Your Honor, because there it is deceptive for the collector to use the word settle, invite the payment, and not make the subsequent disclosure. It's not about the debtor in that instance. It's about the collector and the language that they use in that letter. The last point I'll make on this. Before we move on, so what you're suggesting is you would like to see an opinion that affirms, but you would put a proviso our result may be different depending on revival of a debt. I would like to see an affirmance on the letter in this context, yes. That could be a determinative factor. That is it. In another state. If Pennsylvania has got it. I think it could be, and of course it had a big part in the analysis in the other three circuits, right? Where the law was different. Yeah, Michigan had revived. And the last thing is the world that we would live in if this letter is an invitation to enforceability and a threat to sue is either a sea of disclaimers or people are going to stop sending these letters. And there's already litigation over the disclaimers. I don't think it's going to mind if you didn't send the letter in the first place. Well, that shouldn't be the goal. I think you have advantages to that. That's not a, I don't think, a viable position. But my only point is that that's where Huertas has it right. Huertas has a very administrable line in terms of deciding these cases that going forward can be utilized by courts to make the decisions the same way the district courts have in this circuit routinely. Well, you could say resolve. In fact, you had Huertas on the books, but LVNV decided settle was the better word to use. And one wonders why. Maybe it's because they thought it sounded more like a threat. I think, Your Honor, it's interchangeable in this context, as I said. All right. Thank you. Mr. Marcus, before you start, could I ask you to address something that Judge Kethledge touched on in his dissent? He makes, I think, an important point there, which is if the Dunning letter says pay me all $1,200, that's fine. But pay me $0.10 on the dollar is not fine? There is something incongruous about that, is there not? I think you have to go back to what the FTC spoke about. These are debts that historically would never purchase or bought because of how worthless they are. And an example that I was speaking about with someone the other day is if I go buy a $200,000 Ferrari, I don't say, well, it's usually on sale for $250,000, so I'd save $50,000. I say I spent $200,000. And this debt that they're offering to settle, where they're offering a lower price, the reason why they're doing it is because they're making more money by doing that. They have done the numbers and established that they're collecting ten times more the amount from consumers. Sure. And what is nefarious about that? These are lawful debts. There's no question about that. That's accepted for the purpose of argument. What is nefarious about somebody saying I'll buy that bad debt for $0.02 because I think I can collect, after all my costs, at least $0.04 or $0.05 or $0.10? You make it sound like you started that argument by saying a professional debt collector as if there was something, like we should all wash our hands after we heard that. I mean, what is wrong with somebody saying this is a lawful debt, and if I can encourage somebody in a lawful manner to pay the debt or some portion of it, it's all the way around good. Sure. I think they're taking advantage of consumers who haven't seen this debt for over ten years on occasion, like here, and haven't heard about the debt. My plaintiff said she hasn't heard about the debt in over ten years, all of a sudden gets a bill for $1,200. She doesn't remember even owing it. And to her, she may say, I will pay the $128 because I'm buying protection. I know. I don't have to worry about this, worry about getting sued, worry about getting my debt. I'll send them the $128 and they're happy and I'm happy. Right. I don't think that's the case in most scenarios. I think if you ask consumers in most scenarios, that's the problem. Sure. We can't make these decisions based on the vagaries of how people respond to these things. Correct. The court has to determine whether a least sophisticated consumer would interpret this letter and be misled. And it doesn't matter whether my specific client was misled, it's whether a least sophisticated consumer could be misled. And that's Judge Keflage's point. He's saying only a lawyer would get wrapped around the axle about the word settle. Yes. That only a lawyer would see this and say, oh, settlement of the debt, that must mean a lawsuit. Whereas he's saying, you know, the least sophisticated debtor is going to be thinking, hey, I haven't heard about this debt for ten years. I don't care. Or maybe I do care. And if I do care, I care enough because I have a moral sense or because I'm tired of my credit rating being hit by it. And why isn't all that what Judge Jordan is talking about a factual question? I was stunned to hear you say when you were first up here it's a legal question because Chief Judge Wood in her opinion in McMahon said it's a fact question. Well, the Seventh Circuit is the only circuit in the country that says that these issues, whether something is false deceptive or misleading, is a factual question. The Third Circuit and every other circuit have determined courts have the power to determine what could deceive. Now, on occasion we need some. But how do we know who the least sophisticated consumer is? I mean, we have enough trouble determining post hoc what a, quote, reasonable juror would do. At least we have some familiarity with jurors. We're not in the business of selling goods and services. That's why I think it's important that the court gives some deference to the government bodies charged with enforcing. Now, while there's no requirement to have their own agendas, they have their own, right? I mean, don't we have to just read the statute and apply the statute? Yes, and the statute itself. And by the way, why are we doing the least sophisticated consumer? I don't see that in the statute any more than I see threat of litigation in the statute. Well, when you go into the intent of the statute, it's to protect everyone. So in order to effectuate its remedial purpose, you have to protect even the least sophisticated consumer. Not everyone, right? I mean, not people who are bizarre or psychotic or fanciful or, like, rational people but not sophisticated, right? And literate rational people who can read and understand what's being said to them. And so in the end, we come back to this question of does the word settle vary so dramatically from the word resolve that we should say, you know what? That sure smells like a threat of litigation. Where it is doesn't control. Again, threat, you do not need, like Judge Hardeman was saying before, you do not need a threat to be false, deceptive, or misleading. That's not the argument we're making. And like Judge Hardeman stated, if the letter said this debt is legally enforceable, that's not a threat, but clearly it's a false threat of litigation. I'm sure you could be deceptive without being threatening litigation, but for purposes of this, it only matters if it does amount to a threat of litigation, right? I mean, that's Mr. Martin's point, and if you've got a response to it, I'd be interested to hear it if my colleagues will indulge me. I mean, it has to come back to that. If it's not threatening enforcement when it couldn't be enforced, how could it be deceptive? All it has to do is tell a consumer that they could be sued. Not that they will be sued, but that they really could be sued. That's why it's a false representation as to the legal status. There's a separate violation, E-5, which requires a threat or a threat to take action that were not intended to be taken. You always come back to enforcement. You never go away from enforcement. You're always in your argument, and Judge Kefla just ascended points it out, and Mr. Martin has pointed it out. In the end, for this to be actionable, you've got to somehow say, this fools people into doing something they wouldn't otherwise do for fear of enforcement. Or fear that they may down the road get sued. Yeah, same difference, right? Right, but they may not be that specific debt collector that's threatening them, and they may say, look, this is telling me that I could be sued. Pay this amount or you could be sued. Not that we will sue you, and I would assume that most consumers who actually pay the debt, if they were told afterward you couldn't have been sued, they may have reacted differently. So I don't see this as a requirement that there needs to be a threat, or it needs to be taken as a threat, just merely that a consumer reads it and understands that they could be sued down the road. I just want to change your focus for one second. Sure. Count 2, you allege a violation of Section 1692-F. I notice that's not addressed at all in your briefs. Is that something you've sort of left aside at this point? Yes, Your Honor. Okay, thank you. Okay, thank you so much, counsel, for the excellent briefing and argument. And like the other case, we'd like to agree to a sidebar.